Hearing Date and Time: July 24, 2014, 10:00 am (Prevailing Eastern Time)
Response Date and Time: June 27, 2014, 6:00 pm (Prevailing Eastern Time)

MILLER & CHEVALIER CHARTERED
Barry J. Pollack
Charles F. B. McAleer, Jr.*
Jonathan D. Kossak*
655 Fifteenth Street, N.W., Suite 900
Washington, D.C.  20005-5701
Tel:   (202) 626-5800
Fax:   (202) 626-5801

* *Pro Hac Vice* Application Pending

*Attorneys for Mr. Dennis D'Alessandro*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re:                                                  Case No. 12-12321 (MG)

DEWEY & LEBOEUF LLP,                                    Chapter 11

                             Debtor.

---------------------------------------------------------------x

ALAN M. JACOBS, as Liquidating Trustee of
The Dewey & LeBoeuf Liquidation Trust,                  Adversary No. 14-01919

                             Plaintiff,

         v.

DENNIS D'ALESSANDRO,

                             Defendant.

---------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT DENNIS D'ALESSANDRO'S MOTION TO DISMISS
## THE LIQUIDATING TRUSTEE'S COMPLAINT PURSUANT TO FRCP RULE 12(b)(6)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

I.     FACTUAL ALLEGATIONS SPECIFIC TO MR. D'ALESSANDRO .................2

     A.    Mr. D'Alessandro Negotiates an Employment Agreement at Arms-Length. .................................................................................2

     B.    Mr. D'Alessandro Had No Substantial Control over the Firm's Corporate Policies or Decision-making. .....................................................3

     C.    Mr. D'Alessandro Retires as COO and Negotiates a Second Employment Agreement in Which He Agrees to a Reduction in Compensation. ...........................................................................7

II.     LEGAL STANDARD .........................................................................7

III.     ARGUMENT ....................................................................................8

     A.    Because the Complaint Does Not, and Could Not, Adequately Allege that Mr. D'Alessandro Was a D&L Insider, the Complaint Must Be Dismissed. ............................................................................8

     B.    Assuming, in the Alternative, that Mr. D'Alessandro Is an Insider, the Complaint Is Deficient on Other Grounds as Well. ............................17

     C.    The Trustee Is Judicially Estopped from Seeking to Clawback Conveyances at Least to the Extent that They Were Made Prior to 2010............................................................................24

CONCLUSION...................................................................................25

1429916.1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp.*,
  365 B.R. 24 (Bankr. S.D.N.Y. 2007) ...............................................................2, 18

*Adelphia Recovery Trust v. Goldman, Sachs & Co.*,
  No. 11-1858-cv, 2014 U.S. App. LEXIS 6211 (2d Cir. Apr. 4, 2014) ............................14, 25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................7, 8

*In re B. Schwartz*,
  131 B.R. 623 (N.D. Ohio 1991) ..................................................................19

*Barber v. Golden Seed Co.*,
  129 F.3d 382 (7th Cir. 1997) ....................................................................22

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 544-45 (2007) .....................................................................8

*In re Bernard L. Madoff Inv. Sec. LLC*,
  458 B.R. 87 (Bankr. S.D.N.Y. 2011) ............................................................19

*In re Caremerica, Inc.*,
  409 B.R. 737 (Bankr. E.D.N.Y. 2009)........................................................10, 23

*In re Coin Phones, Inc.*,
  153 B.R. 135 (Bankr. S.D.N.Y. 1993) ...........................................................14

*In re CPW Assocs.*,
  No. 99-5068, 2000 U.S. App. LEXIS 23470 (2d Cir. Sept. 14, 2000) ............................12, 13

*In re CPW Assocs.*,
  225 F.3d 645 (2d Cir. 2000).....................................................................12

*In re Custom Dock & Repair, Inc.*,
  Nos. 04-122 & 123, 2004 Bankr. LEXIS 2002 (Bankr. M.D. Fla. Sept. 30,
  2004) .........................................................................................19

*In re Dewey & LeBoeuf LLP*,
  Case No. 12-12321 (MG) ........................................................................5

*In re Dreier*,
  453 B.R. 499 (Bankr. S.D.N.Y. 2011) ...........................................................18

ii

*In re Dreier LLP*,
    452 B.R. 391 (Bankr. S.D.N.Y. 2011) ...............................................................7, 8

*In re Enron Creditors Recovery Corp.*,
    376 B.R. 442 (Bankr. S.D.N.Y. 2007) ...................................................................20

*In re Fedders N.A., Inc.*,
    405 B.R. 527 (Bankr. D. Del. 2009) ......................................................................22

*In re Global Aviation Holdings, Inc.*,
    478 B.R. 142 (Bankr. E.D.N.Y. 2012)....................................................................11

*Global Network Commc'ns Inc. v. City of New York*,
    458 F.3d 150 (2d Cir. 2006)....................................................................................2

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995).............................................................................12, 15

*In re Jones Truck Lines, Inc.*,
    130 F.3d 323 (8th Cir. 1997) ..................................................................................19

*Kiobel v. Royal Dutch Petroleum Co.*,
    621 F.3d 111, 124 (2d Cir. 2010)..............................................................................7

*Liquidation Trust v. Daimler AG (In re Old CarCo LLC)*,
    509 Fed. Appx. 77, 78-79 (2d Cir. 2013)................................................................23

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ..........................................................................................14, 25

*In re NMI Systems, Inc.*,
    179 B.R. 357 (D.D.C. 1995) .......................................................................11, 12, 14

*In re Old CarCo LLC*,
    No. 11 Civ. 5039, 2011 U.S. Dist. LEXIS 134539 (S.D.N.Y. Nov. 22, 2011) ...................3, 23

*In re Roblin Industries, Inc.*,
    78 F.3d 30, 42 (2d Cir. 1996)..................................................................................20

*In re Ruffini*,
    No. 12-8396-reg, 2014 Bankr. LEXIS 733 (Bankr. E.D.N.Y. Feb. 25, 2014) ......15, 22, 24, 25

*In re S.M. Acquisition Co.*,
    No. 05 C 7076, 2006 U.S. Dist. LEXIS 58960 (N.D. Ill. Aug. 7, 2006) ................10

*In re Sharp Int'l Corp.*,
    403 F.3d 43 (2d Cir. 2005).................................................................................16, 17

iii

*In re Teligent Inc.*,
   380 B.R. 324 (Bankr. S.D.N.Y. 2008) .................................................................................20

*Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*,
   191 A.D.2d 86, 90-91 (N.Y. App. Div. 1st Dep't 1993) .........................................................17

*Vaughn v. Air Line Pilots Ass'n, Int'l*,
   604 F.3d 703 (2d Cir. 2010).......................................................................................................7

*In re Velo Holdings, Inc.*,
   472 B.R. 201 (Bankr. S.D.N.Y. 2012) .....................................................................................10

**Statutes**

11 U.S.C. § 101(31)(C) ...................................................................................................................9

11 U.S.C § 544 ....................................................................................................................1, 15, 24

11 U.S.C. § 547 ...................................................................................................................... *passim*

11 U.S.C. § 548 ...................................................................................................................... *passim*

11 U.S.C. § 550 .............................................................................................................1, 9, 15

**Other Authorities**

Fed. R. Bankr. P. 7012(b) ...........................................................................................................1, 7

Fed. R. Civ. P. 12(b)(6)..........................................................................................................2, 7, 17

N.Y.D.C.L. §§ 277-78 ...............................................................................................................1, 15

## PRELIMINARY STATEMENT

Defendant Dennis D'Alessandro, by and through his counsel, respectfully submits this Memorandum of Law in Support of his Motion to Dismiss the Liquidating Trustee's Complaint pursuant to Fed. R. Bankr. P. 7012(b) for failure to state a claim.  The Complaint of Alan M. Jacobs against Mr. D'Alessandro is based almost entirely on the faulty premise that Mr. D'Alessandro was an "insider" of the Debtor, Dewey & LeBoeuf LLP ("D&L").  As is apparent from the Complaint, Mr. D'Alessandro was never a partner at D&L; nor did he hold a position to which the firm's partnership agreement designated any authority.  Indeed, the partnership agreement does not even reference the position held by Mr. D'Alessandro.  The partnership agreement delegated all management authority to an Executive Committee of its partners and its Chairman.  The Complaint alleges that the Chairman, in his discretion, delegated certain unspecified tasks to Mr. D'Alessandro and agreed to highly compensate him.  The Complaint does not plausibly allege that Mr. D'Alessandro was an insider – someone with unqualifiable authority to dictate the firm's corporate policies or participate in the firm's corporate decision-making.  Rather, it merely alleges that he worked for an insider.  Indeed, the Debtor has previously produced evidence to this Court from which the Court concluded that there were only two non-partners of D&L who served as its principal managers; Mr. D'Alessandro was not one of them.  Because Mr. D'Alessandro was not himself an insider, as a matter of law, the Trustee's efforts to claw back compensation from him in the manner set forth in the Complaint must fail.

The Complaint sets forth four claims for relief:  (1) a preference action under 11 U.S.C. §§ 547 and 550; (2) a constructive fraud claim under New York law, N.Y.D.C.L. §§ 277-78, via 11 U.S.C. §§ 544 and 550; (3) a constructive fraud claim under federal law, 11 U.S.C. §§ 548(a)(1)(B)(ii)(IV) and 550; and (4) a preemptive constructive fraud claim under 11 U.S.C

§§ 548 and 550 related to contractual claims that Mr. D'Alessandro might assert against the Trustee. All four of these claims are dependent in some fashion (the three federal claims entirely and the state law claim in part) on the faulty premise that Mr. D'Alessandro was a D&L insider.

In addition, the Complaint must be dismissed in its entirety because it also fails adequately to allege that Mr. D'Alessandro's employment agreements with D&L were not negotiated at arms-length, or in the normal course of the firm's business operations, or that Mr. D'Alessandro received compensation for his services to D&L without providing in return a reasonably equivalent value or fair consideration. Instead, the face of the Complaint shows that Mr. D'Alessandro was compensated for his services in the ordinary course of business in the context of a contemporaneous exchange. Accordingly, for these independent reasons, all four claims set forth in the Complaint are fatally flawed and must be dismissed.

## I.     FACTUAL ALLEGATIONS SPECIFIC TO MR. D'ALESSANDRO

### A.     Mr. D'Alessandro Negotiates an Employment Agreement at Arms-Length.

According to the Complaint, Mr. D'Alessandro entered into an Employment and Long Term Incentive Plan Agreement (the "Employment Agreement") with the Debtor on August 29, 2007. Compl. ¶ 36. The merger between the Debtor's precursor entities, Dewey Ballantine LLP ("Dewey") and LeBoeuf, Lamb, Greene & MacRae LLP ("LeBoeuf") was finalized on October 1, 2007. *Id*. ¶ 8. Stephen Davis, who was LeBoeuf's Chairman and became D&L's Chairman, signed the Employment Agreement on behalf of the merged firm. *Id*. ¶¶ 36.[1]

---

[1] The Employment Agreement, which was not attached to the Complaint, is attached here as Ex. A. "[O]n a motion to dismiss, a court may consider certain documents in addition to the complaint, including the contents of any documents attached to the complaint or incorporated by reference; . . . [as well as] documents which the non-moving party knew of or relied on in connection with its complaint." *In re Adelphia Commc'ns Corp.*, 365 B.R. 24, 34 (Bankr. S.D.N.Y. 2007); *see also Global Network Commc'ns Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (consideration of such documents "prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting.") (citations omitted).

The Complaint does not allege that the negotiation between D'Alessandro and Davis related to the Employment Agreement was anything other than at arms-length.  Nor does the Complaint allege any prior relationship between D'Alessandro, who pre-merger had been an employee of Dewey, and Davis, who pre-merger was a partner in LeBoeuf and its Chairman.

LeBoeuf had over 700 attorneys at the time it merged with Dewey, which was widely recognized as "one of the most prestigious New York-based firms."  Compl. ¶¶ 11-12.  The combined firm "was forced to deal with massive expenses related to the combination, including redundant overhead (such as multiple office leases in the same city, duplicative staffing, and equipment leases), all of which necessarily affected the firm's bottom line while it worked toward integration."  *Id*. ¶ 20.  It was against this backdrop that Mr. D'Alessandro negotiated the terms of his Employment Agreement, which consisted of four components:  (1) an annual contractual salary of $900,000 from 2008 to 2013; (2) an annual contractual bonus of $200,000 from 2008 to 2013; an annual bonus to be determined at the discretion of the firm's Chairman; and a fixed annual $200,000 trust payment to be paid out every three years (in 2010 and 2013).  *Id*. ¶¶ 37-41.  The Employment Agreement was executed 16 months before the Complaint alleges that D&L was insolvent.  *See id*. ¶ 31 (alleging insolvency as of January 1, 2009).

## B.    Mr. D'Alessandro Had No Substantial Control over the Firm's Corporate Policies or Decision-making.

On October 1, 2007, the merger of the two law firms was finalized and the Dewey & LeBoeuf LLP Partnership Agreement ("DLPA") was executed to govern the newly formed entity.[2]   Under the DLPA, "the general management and governance of the Firm and the

---

[2] The DLPA is not attached to the Complaint.  For the reasons set forth in footnote 1, it is attached here as Exhibit B.  Further, because the Debtor previously attached the DLPA to one of its filings, it is already part of the record and the Court may take judicial notice of it.  *See In re Old CarCo LLC*, No. 11 Civ.

1429916.1

implementation of this Agreement [were] delegated by the Partners to the Executive Committee and the Chairman." DLPA § 4.1. *See also* DLPA § 4.3 ("Except as otherwise expressly provided in this Agreement, the Executive Committee shall have the final authority on all matters relating to the Firm and this Agreement . . . ."); and § 4.6 ("The role of the Chairman is to serve as Chairman of the Executive Committee and Chairman of the Partnership, to preside at all meetings of the Executive Committee and of the Partnership, to be responsible for the day-to-day management of the business of the Firm and to undertake such other duties as are prescribed by this Agreement for the Chairman or are determined by the Executive Committee.").

The Executive Committee, consisting of 22 partners of the firm, was permitted to "delegate any such matters hereby delegated to it by the Partners to such other committees and individuals as it may deem appropriate." *Id*. § 4.1. But the Executive Committee had "final authority on all matters relating to the Firm and [the DLPA], including, without limitation," matters such as "admitting new Partners to the Firm"; "[r]emoving a Partner with or without cause as a member of the firm"; "[e]stablishing the Participation Target and any Special Payment of each Partner"; and "appointing committees of the Partners and employees of the firm to assist the Executive Committee in the operation of the Firm." *Id*. § 4.3(a), (d), (f) & (k). In addition, the Executive Committee had final authority over "[m]aking all decisions with respect to changes in the scope or nature of the Firm's practice, including . . . making all financial, personnel and operating decisions for the business of the Firm, including without limitation with respect to borrowing of money, [and] making capital expenditures . . . ." *Id*. § 4.3(i), (j).

Section 4.9(a) of the DLPA stated that Davis, as "[t]he Initial Chairman[,] shall designate all of the initial non-legal executive and administrative positions of the Firm in consultation with

---

5039, 2011 U.S. Dist. LEXIS 134539, at *32-33 (S.D.N.Y. Nov. 22, 2011) ("In particular, it is appropriate to take judicial notice of filings in bankruptcy proceedings.").

Morton A. Pierce." *Id.*   According to the Complaint, Davis used his powers under Section 4.9(a), *inter alia*, to appoint Mr. D'Alessandro, who was not a partner of the firm, as the firm's Chief Operating Officer ("COO").   The Complaint alleges in conclusory fashion that the COO was considered an "officer" by D&L.   Compl. ¶ 1. Yet, the DLPA does not make any reference to, much less define, the position of COO.   Nor does the Complaint allege what responsibilities were delegated to Mr. D'Alessandro as COO.

During Mr. D'Alessandro's tenure at the firm, the Complaint alleges that a number of key allegedly ill-conceived decisions were made by the management of the firm, including permitting high Participation Targets, Compl. ¶¶ 16-19; approving partner bonuses in 2009 and 2010, *id.* ¶¶ 25-27; approving a $150 million bond offering in April 2010, *id.* ¶ 28; and prioritizing cash distributions to partners at the expense of creditors, *id.* ¶ 33.   The Complaint does not ascribe any of these decisions to Mr. D'Alessandro.

The absence of such allegations is telling.   The Debtor has previously averred to this Court that Mr. Davis, Stephen DiCarmine (D&L's former Executive Director) and Joel Sanders (D&L's former Chief Financial Officer) – but not Mr. D'Alessandro – played an "integral role in the Debtor's downfall."   Mem. Op. and Order Granting Debtor's Motion for an Order Approving Partner Contribution Settlement Agreements and Mutual Releases for Participating Partners ("PCP Decision")  (Oct. 9, 2012, DE 538).   As D&L's Chief Restructuring Officer testified:

> What I would say is that in all of those conversations, and in all of the anger and emotion that went with that, the blame was typically pointed to **the three people that managed the firm**:  Steve Davis, DiCarmine, and Sanders. There were no -- in any of those conversations, there was no other senior member, leader, executive committee member, named as being associated with the responsibility for the firm's demise.

*In re Dewey & LeBoeuf LLP*, Case No. 12-12321 (MG), H'rg Tr. 30:14-20 (Sept. 21, 2012) (emphasis added), *available at Jacobs v. DiCarmine & Sanders*, Adv. Pro. No. 13-01765 (MG),

1429916.1

Mem. of Law in Support of Defs.' Mot. to Dismiss Pl.'s Compl. at Ex. A (May 1, 2014) (DE 16-

1) [*hereinafter* "Hr'g Tr."].

> Similarly, the Debtor's Financial Analyst testified:
>
> [T]here are actions that arise from all of these allegations [of misconduct], [and we had to determine] . . . who would they have to be against.  And the first thing that we came up to is, since they were all signed by Steve Davis, presumably they would sound against Steve Davis.  Since they were all paid by Joel Sanders, presumably he would have been a party involved in these conduct -- in the conduct.  And since the two of them operated extensively with **the third member of management**, Steve DiCarmine, presumably they would be the people against whom the claims would sound.

*Id*. at 92:1-9 (emphasis added).

The Debtor made these statements in the main bankruptcy case, when the Court held an

evidentiary hearing to decide whether to approve a settlement between the Debtor and 444

former D&L partners (the "PCP Settlement").  The hearing satisfied the Court that "the Debtor

and its professionals [had] conducted an appropriate inquiry and analysis of the facts and

circumstances of this case . . . ."  PCP Decision at 17.  After hearing testimony, the Court made

"findings of fact and conclusions of law," *id*. at 4 n.1, including a finding that "[t]he Debtor

ha[d] preserved its own claims . . . against the **three principal managers** of the firm . . . Davis,

DiCarmine and Sanders. . . ."  *Id*. at 17 & n.8 (emphasis added).  Thus, not only does the

Complaint fail to allege that Mr. D'Alessandro possessed the authority of an insider to exert

substantial control over corporate policy and decision making, but also the Debtor, in whose

shoes the Trustee stands, has previously specifically excluded Mr. D'Alessandro from those

managers who were principally involved in the key decisions highlighted in the Complaint.

1429916.1

C.      **Mr. D'Alessandro Retires as COO and Negotiates a Second Employment Agreement in Which He Agrees to a Reduction in Compensation.**

On May 13, 2011, with two years left on his original Employment Agreement, Mr. D'Alessandro announced his retirement as COO. *Id.* ¶ 58. However, Mr. DiCarmine, who himself had been delegated certain management responsibilities by Davis, reached an agreement with Mr. D'Alessandro that he would provide consulting services for another year and that Mr. D'Alessandro would receive the same compensation he had received under his prior contract for 2011; in 2012, he would receive $550,000 (and no bonuses or trust contributions) for work through June 2012. *Id.* The Complaint does not allege that this negotiation was anything other than at arm's length. On May 28, 2012, the firm filed for bankruptcy. *Id.* ¶ 35.

## II.      LEGAL STANDARD

Mr. D'Alessandro moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), which is made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure. Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Dreier LLP*, 452 B.R. 391, 406 (Bankr. S.D.N.Y. 2011) (internal quotations omitted).

Courts must use a two-prong approach when considering a motion to dismiss. "First, the court must accept all factual allegations as true," but only after "discounting legal conclusions clothed in the factual garb." *Id.* (citing *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010)). In *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Supreme Court explained that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Legal conclusions "must be supported by factual allegations." *Id.*; *see id.* at 681 ("[B]are assertions . . . [that are] nothing more than a 'formulaic recitation of the elements' of a . . . claim,

7

. . . are conclusory and not entitled to be assumed true.") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 544-45 (2007)).

Second, the court "must determine if these well-pleaded factual allegations state a 'plausible claim for relief.'"    *Id.* (quoting *Iqbal*, 556 U.S. at 679).   "Courts do not make plausibility determinations in a vacuum; it is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"   *In re Dreier LLP*, 452 B.R. 391, 407 (Bankr. S.D.N.Y. 2011) (quoting *Iqbal*, 556 U.S. at 679).   Accordingly, "plausibility" requires "more than a sheer possibility that a defendant has acted unlawfully."   *Id.* at 406 (quoting *Iqbal*, 556 U.S. at 678); *see also id.* at 407 ("The pleadings must create the possibility of a right to relief that is more than speculative.").

## III.    ARGUMENT

### A.    Because the Complaint Does Not, and Could Not, Adequately Allege that Mr. D'Alessandro Was a D&L Insider, the Complaint Must Be Dismissed.

Claims I, III, and IV of the Complaint are dependent on the characterization of Mr. D'Alessandro as an "insider."   Claim II relies in part on the same characterization.   Mr. D'Alessandro was not a partner and thus not a *per se* insider under the Bankruptcy Code.   The Complaint's only allegations regarding Mr. D'Alessandro's supposed insider status are purely conclusory.   They consist of stereotypical formulaic recitations of various statutory provisions, unsupported by any further factual allegations.   As such, they are not entitled to any presumption that they are true.   Further, as discussed above, they are undermined by the Debtor's previous position before this Court and the Court's resulting finding that the firm's principal managers did not include Mr. D'Alessandro.   The absence of any nonconclusory allegations that could plausibly establish that Mr. D'Alessandro was an insider warrants dismissal of these claims.

8

1.    *Mr. D'Alessandro Is Not a Statutory or Non-Statutory Insider for Purposes of Sections 547 and 550 or Sections 548 and 550 and Therefore, Claims I, III, & IV of the Complaint Must Be Dismissed.*

a.    <u>Insider Status and Sections 547 & 548.</u>

The characterization of Mr. D'Alessandro as an insider is critical to both the Complaint's § 547 claim (Claim I) and its § 548 claims (Claims III and IV).

For non-insiders, the Trustee may only avoid pre-petition payments under § 547 going back 90 days before the petition date. 11 U.S.C. § 547(b)(4)(A). Claim I is based entirely on § 547(b)(4)(B), which allows the Trustee to avoid pre-petition payments to insiders between 90 days and a full year before the petition date.

The Trustee's Claims III and IV under § 548 focus on only one subpart – § 548(a)(1)(B)(ii)(IV), which states that:

> The trustee may avoid any transfer (including any transfer to or for the benefit of an *insider* under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an *insider* under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily received less than a reasonably equivalent value in exchange for such transfer or obligation; and . . . made such transfer to or for the benefit of an *insider*, or incurred such obligation to or for the benefit of an *insider*, under an employment contract and not in the ordinary course of business.

*Id*. (emphasis added).

For both sections, an "insider" is defined at 11 U.S.C. § 101(31). Because D&L was a limited liability partnership, § 101(31)(C) is the operative provision. Under § 101(31)(C)(v), the Complaint must allege that Mr. D'Alessandro was a "person in control of the debtor."[3]

---

[3] There are five categories of insiders under § 101(31)(C): "(i) [a] general partner in the debtor; (ii) [a] relative of a general partner in, general partner of, or person in control of the debtor; (iii) [a] partnership in which the debtor is a general partner; (iv) [a] general partner of the debtor; or (v) [a] person in control of the debtor." *Id*. The Complaint fails to allege which category it claims applies to Mr. D'Alessandro, but the only category that could apply is a "person in control of the debtor." *Id*. § 101(31)(C)(v).

9

b.     <u>Mr. D'Alessandro Is Not a Person in Control of the Debtor.</u>

The phrase "person in control of the debtor" is not further defined by statute.  However, courts have stated that "insider status can . . . be determined on a case-by-case basis from the totality of the circumstances, including the degree of an individual's involvement in a debtor's affairs."  *In re Velo Holdings, Inc.*, 472 B.R. 201, 208 (Bankr. S.D.N.Y. 2012).  "In such cases, insiders must have at least a controlling interest in the debtor or . . . exercise sufficient authority over the debtor so as to *unqualifiably dictate corporate policy and the disposition of corporate assets*."  *Id.* (internal quotation marks omitted) (emphasis added).

There is no factual allegation in the Complaint that Mr. D'Alessandro possessed, much less exercised, sufficient authority over D&L that he was able to "unqualifiably dictate corporate policy and the disposition of corporate assets."  *Id.*  As stated in *In re Caremerica, Inc.*, 409 B.R. 737 (Bankr. E.D.N.Y. 2009), "the mere labeling of transferees as insiders is not enough to establish a reasonable inference of insider status."  *Id.* at 753.  Rather, "to establish a reasonable inference of insider status," the Trustee is required to allege "details regarding the relationship between the debtor[] and the defendant."  *Id.  See also In re S.M. Acquisition Co.,* No. 05 C 7076, 2006 U.S. Dist. LEXIS 58960, at *22 (N.D. Ill. Aug. 7, 2006) ("[A] claim of insider status is adequately plead if it describes both a source of power *and* alleged instances in which power was exercised. . . .") (internal quotations omitted) (emphasis added).

The Complaint fails to make any non-conclusory factual allegations about Mr. D'Alessandro's job responsibilities with D&L that could plausibly establish either that Mr. D'Alessandro possessed sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets or that he exercised such authority.

Instead, the Complaint makes three conclusory allegations regarding Mr. D'Alessandro's role at D&L:

10

- "Approximately one month after the Debtor entered into the D'Alessandro Employment Contract, the Debtor adopted the DLPA, which confirms D'Alessandro's status as an insider of the Debtor," Compl. ¶ 50;

- "Under the DLPA, the Debtor was to be managed by an Executive Committee, but the Executive Committee could (and did) delegate its powers to the firm's Chairman (Davis).  See DLPA § 4.1.  As Chairman, Davis was 'responsible for the day-to-day management of the business of the firm.'  DLPA § 4.6.  To fulfill those responsibilities, Davis was empowered to 'designate all of the initial non-legal executive and administrative positions of the Firm . . .' (DLPA § 4.9(a)), which he did, in part, by appointing D'Alessandro as the Debtor's Chief Operating Officer," Compl. ¶ 51; and

- "Upon information and belief, the Debtor's Executive Committee permitted Davis, D'Alessandro, and other non-partner executives to manage the Debtor with little or no oversight.  Under Davis, D'Alessandro exerted substantial control over the Debtor's management decisions."  Compl. ¶ 52.

The first allegation – that the DLPA confirms that Mr. D'Alessandro is an insider – is purely conclusory and demonstrably false.  The DLPA does not refer to Mr. D'Alessandro, does not refer to the position of COO, does not identify officer positions, does not identify insiders, and is otherwise devoid of any provision that might "confirm[] D'Alessandro's status as an insider of the debtor."  When allegations are contradicted by key documents upon which the Trustee relies in his Complaint, the Court should not accept those allegations as true.

Second, the Trustee alleges that Mr. D'Alessandro was appointed as COO of D&L and remained in that position through May 2011.  But a job title "is not dispositive for purposes of insider analysis."  *In re Global Aviation Holdings, Inc.*, 478 B.R. 142, 148 (Bankr. E.D.N.Y. 2012).  For example, in *In re NMI Systems, Inc.*, 179 B.R. 357 (D.D.C. 1995), the court refused to characterize a vice-president of the debtor as an insider because "[w]hat influence [he] enjoyed in the company was not because of his title . . ., but as a valuable employee enjoying leverage like other valuable employees because he could leave if not paid. . . ."  *Id*. at 367.  The court explained that the vice president's "leverage did not suffice to constitute [him as] an

11

insider, one in a position of *undue* influence giving him an advantage as a creditor when the company decided what creditors to pay.  His advantage was as a creditor of a particular type (a valuable employee), not as someone with an inside position of influence." *Id*. (emphasis added).

The Complaint asserts that Mr. Davis delegated portions of his authority in fulfilling the responsibilities of the "day-to-day management of the business of the firm" to a number of administrative employees, including Mr. D'Alessandro.  This allegation does not lead to a plausible inference that Mr. D'Alessandro was an insider who unqualifiably dictated corporate policy and the disposition of corporate assets.  Instead, Mr. D'Alessandro was merely a person to whom Mr. Davis delegated some of *his* unspecified managerial tasks.  That an insider hires someone with expertise to carry out some of his assigned tasks does not transform that person into an insider.  *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (a person or entity is not in control of a company simply because he/she/it may be more "skilled and knowledgeable concerning specialized areas of [management] activity than . . . [the] generalist business executives"; rather, it is the insiders who hire the employees and independent contractors to "engage[] in those areas of activity on behalf of the business enterprise.").

For example, *In re CPW Assocs.*, 225 F.3d 645 (2d Cir. 2000), the Second Circuit affirmed the bankruptcy and district court's determination that a vice-president of a limited partnership was not an insider.  In a summary order filed after the affirmation opinion was issued, the Second Circuit highlighted the bankruptcy judge's conclusion that the evidence "indicated that . . . [the] responsibility for 'the day-to-day functions of [the Debtor]' . . . was 'delegated' to [the vice-president] by someone else." *In re CPW Assocs.*, No. 99-5068, 2000 U.S. App. LEXIS 23470, at *18 (2d Cir. Sept. 14, 2000) (summary order).  The Second Circuit agreed that the vice president appeared to be "a person not in control but one who exercised and

12

functioned pursuant to someone else who is in control." *Id*. The Complaint alleges that Mr. Davis was a member of the Executive Committee of the partnership to whom the DLPA delegated day-to-day management of the firm. The allegation that Mr. D'Alessandro was one of several people that Mr. Davis, an insider, employed to assist in carrying out some unspecified portion of his management responsibilities is insufficient to establish that Mr. D'Alessandro was himself an insider of D&L. The allegation fails to establish that it was Mr. D'Alessandro, rather than Mr. Davis, who possessed unqualifiable control over D&L.

Third, the Complaint alleges Mr. D'Alessandro "exerted substantial control over the Debtor's management decisions." This is another conclusory allegation that does not provide the necessary factual allegations to establish insider status. The Complaint does not describe what control Mr. D'Alessandro allegedly exercised over what type of management decisions. Whatever management responsibilities of Mr. Davis that Mr. Davis chose to delegate to him, Mr. Davis could revoke at any time for any reason. Thus, the Complaint's non-conclusory factual allegations are that Mr. D'Alessandro was not a D&L partner and that D&L delegated management responsibility to one of its partners, Mr. Davis, not to Mr. D'Alessandro.

Further, even assuming *arguendo* he possessed the authority to control, the conclusory allegation that Mr. D'Alessandro exercised such control not only lacks specificity, it also lacks plausibility. The Debtor has previously presented evidence to this Court that Messrs. DiCarmine and Sanders were the non-partners at D&L most involved in D&L's crucial decision-making. Based on this evidence, the Court has previously made a finding that the "principal managers" of the firm did not include Mr. D'Alessandro. The Trustee's current claim that Mr. D'Alessandro was an insider who exercised unqualifiable control over D&L and was therefore in a position of

13

"*undue* influence," *see In re NMI Systems, Inc.*, 179 B.R. at 367, is at odds with the Trustee's previous assertion of who served as the "principal manager[s]" of the firm.[4]

Rather, Mr. D'Alessandro, according to the Complaint's own allegations, was simply a valuable employee whose primary leverage was that he could leave if not paid, just as in *In re NMI Systems, Inc.* Accordingly, the factual allegations of the Complaint merely establish that Mr. D'Alessandro worked for an insider, not that he was one.

Finally, none of these allegations plausibly establish that Mr. D'Alessandro's employment agreements with D&L were the result of a "special relationship," rather than arm's-length transactions. *See id.* (noting that a factor in determining insider status involves whether the relationship at issue "was the result of an arms-length transaction"); *In re Coin Phones, Inc.*, 153 B.R. 135, 141 (Bankr. S.D.N.Y. 1993) ("[T]he Amended Complaint does not set forth one single allegation regarding a special relationship or control over the debtor by [the defendant]. . . . [Therefore], [t]he Amended Complaint in the present case simply makes conclusory allegations which cannot defeat a motion to dismiss.").

In sum, "domination and control of D&L by Mr. D'Alessandro "is not even meaningfully alleged in the Complaint," and "the Complaint's attenuated allegations of control are contradicted both by more specific allegations in the Complaint and by facts of which [the Court]

---

[4] Indeed, in light of the Trustee's previous position and the Court's resulting finding with respect to who exercised principal management of D&L, estoppel principles preclude a finding that Mr. D'Alessandro was an insider who exercised undue influence over D&L. "Courts have uniformly recognized that . . . [the] purpose [of judicial estoppel] is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001)(internal quotations omitted); *see also Adelphia Recovery Trust v. Goldman, Sachs & Co.*, No. 11-1858-cv, 2014 U.S. App. LEXIS 6211 *10 (2d Cir. Apr. 4, 2014) (same). The Second Circuit most recently applied this doctrine in the bankruptcy context in *Adelphia Recovery Trust*, where it refused to allow the trustee to claim ownership over assets in a fraudulent conveyance action after the trustee and its predecessors in interest had previously treated the assets as owned by a separate subsidiary, including in proceedings that had led to the consummation of the Chapter 11 plan. *See id.* at *1-2, *15-19.

1429916.1

may take judicial notice." *Hirsch*, 72 F.3d at 1095.  Consequently, Claims I, III, and IV of the

Trustee's Complaint must be dismissed.[5]

> 2.  *Claim II of the Complaint Under State Law Fails Because Mr. D'Alessandro Was not a D&L Insider and the Complaint Otherwise Fails Adequately to Allege that He Failed to Act in Good Faith.*

The Complaint's second claim for relief arises under 11 U.S.C §§ 544 and 550 as well as

N.Y.D.C.L. §§ 277 and 278.  Section 544 of the Bankruptcy Code is merely a conduit for the

Trustee to pursue a claim under Section 277 of the N.Y.D.C.L. ("DCL"), which is the state law

version of § 548 of the federal Bankruptcy Code.  Section 277 is similarly substantively to § 548;

however, "fair consideration" under § 277 has the additional element of good faith on the part of

the recipient of the conveyance.  While lack of good faith is presumed for an insider, it is not

presumed for a non-insider.  As established above, the Complaint fails adequately to allege that

Mr. D'Alessandro was an insider.  It also fails otherwise to allege lack of good faith.  Because as

set forth below in Part B.3, the Complaint likewise fails to allege that Mr. D'Alessandro did not

provide D&L "fair consideration" in return for his compensation, Claim II must be dismissed.

Section 277 states, "Every conveyance of partnership property and every partnership

obligation incurred when the partnership is or will be thereby insolvent, is fraudulent as to

partnership creditors, if the conveyance is made or obligation is incurred, . . . (b) [t]o a person

not a partner without fair consideration to the partnership as distinguished from consideration to

the individual partners."

There are two primary differences between §§ 277 and 548:  (1) Section 277 reaches

back to transfers made as many as six years ago, while § 548 reaches back only two, *see In re*

---

[5] While the Complaint fails adequately to plead insider status with respect to any of these Claims, the failure is particularly glaring with respect to Claim I.  That Claim reaches back only one year from the Petition Date, to May 2011.  Yet, the Complaint alleges that as of May 2011, Mr. D'Alessandro was no longer COO of D&L.  Rather, he was merely providing unspecified consulting services.  Compl. at ¶ 58.

1429916.1

*Ruffini*, No. 12-8396-reg, 2014 Bankr. LEXIS 733 *20-22 (Bankr. E.D.N.Y. Feb. 25, 2014); and (2) although the term "reasonably equivalent value" under § 548 "has substantially the same meaning as 'fair consideration' under the DCL, . . . fair consideration also requires good faith on the part of the transferee." *Id.* ("Aside from the good faith element incorporated into New York law, courts use the term 'reasonably equivalent value' interchangeably with the DCL's 'fair consideration' for purposes of analyzing constructive fraud claims . . . .").

The Complaint alleges in conclusory fashion that the transfers were not made in good faith because "they were made by an insolvent partnership to an officer and/or director." Although there is no stated statutory presumption under § 277 that there is a lack of good faith where the transferee is an insider, in the context of corporation law New York courts have grafted a strict liability rule on to the statute by establishing a rule that "the repayment of an antecedent debt [does not] constitute[] fair consideration . . . where the transferee is an officer, director, or major shareholder of the transferor." *In re Sharp Int'l Corp.*, 403 F.3d 43, 54 (2d Cir. 2005) (internal quotation marks omitted). The Complaint seems to attempt to expand this judicially-created presumption from corporate law and apply it to partnerships by tracking the language of the judicially-created corporate presumption and alleging that Mr. D'Alessandro was an "officer and/or director" of D&L. Compl. ¶ 81. Assuming *arguendo* that the presumption applies to partnerships, the conclusory allegation that Mr. D'Alessandro was an officer of D&L (he could not have been a director) is nonetheless deficient.

As set forth above, the Court should not accept conclusory allegations or mere labels. While Mr. D'Alessandro had the word "officer" in his title through May 2011, the mere allegation of his title does not suffice, especially given the (1)specific factual allegations that he was not a partner and had no authority under the DPLA; (2) the failure of the Complaint to allege

that he exercised his authority as COO in a manner that gave him undue influence over D&L's decision-making; and (3) the position taken by the Debtor before this Court and this Court's finding that he was not one of the principal managers of the firm.  Accordingly, the Complaint fails adequately to allege that Mr. D'Alessandro was an officer or other insider for whom there is a presumptive lack of good faith because he accepted payments for an antecedent debt.

Because the Complaint fails adequately to allege that Mr. D'Alessandro was an insider, the allegation that D&L paid him while insolvent cannot establish lack of good faith.

> A conveyance which satisfies an antecedent debt made while the debtor is insolvent is neither fraudulent nor otherwise improper, even if its effect is to prefer one creditor over another.  It is of no significance that the transferee has knowledge of such insolvency.  Nor is the transfer subject to attack by reason of knowledge on the part of the transferee that the transferor is preferring him to other creditors, even by virtue of a secret agreement to that effect.

*In re Sharp Int'l Corp.*, 403 F.3d at 54-55 (quoting *Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*, 191 A.D.2d 86, 90-91 (N.Y. App. Div. 1st Dep't 1993)).

Consequently, the Trustee has failed plausibly to allege that Mr. D'Alessandro failed to act in good faith.  Because, as set forth below in Part B.3, the Complaint likewise fails adequately to plead that Mr. D'Alessandro did not provide fair consideration for the compensation he received, Claim II must be dismissed.

**B.    Assuming, in the Alternative, that Mr. D'Alessandro Is an Insider, the Complaint Is Deficient on Other Grounds as Well.**

1.    *Claim I Must Be Dismissed Because Mr. D'Alessandro May Rely on the Contemporaneous Exchange and Ordinary Course of Business Defenses.*

Even if the Complaint adequately alleged Mr. D'Alessandro was an insider (which as set forth above it does not), § 547(c) provides affirmative defenses to Trustee preference actions. While affirmative defenses are typically not invoked in a Rule 12(b)(6) motion, "a complaint can be dismissed . . . pursuant to a Rule 12(b)(6) motion raising an affirmative defense if the defense

17

appears on the face of the complaint." *In re Adelphia Communications Corp.*, 365 B.R. 24, 33-34 (Bankr. S.D.N.Y. 2007) (internal quotation marks omitted).   The Complaint, on its face, establishes two defenses under § 547(c) -- the "contemporaneous exchange" defense under § 547(c)(1), and the "ordinary course of business" defense under § 547(c)(2).[6]

        a.        <u>Mr. D'Alessandro's Compensation for the Twelve-Month Period Prior to the Petition Date Was Conveyed to Him as a Contemporaneous Exchange for Services He Provided to D&L.</u>

The Complaint's allegations and accompanying exhibits demonstrate that in the year prior to the Petition Date, D&L compensated Mr. D'Alessandro on a regular basis for the consulting services he provided the firm.   Although the Complaint makes a conclusory allegation that Mr. D'Alessandro received more than market value for his services, it does not allege that the compensation was conveyed for anything other than Mr. D'Alessandro's services.   Consequently, the contemporaneous exchange defense defeats Claim I of the Complaint.

Under §547(c)(1), "[t]he trustee may not avoid [] a transfer (1) to the extent that such transfer was (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange."   11 U.S.C. § 547(c)(1).   To establish this defense, "Section 547(c)(1) imposes three requirements on the exchange:  (1) the transferee delivered new value, (2) the parties intended the exchange to be contemporaneous, and (3) the exchange was, in fact, contemporaneous."   *In re Dreier*, 453 B.R. 499, 515 (Bankr. S.D.N.Y. 2011).

Because "new value" is defined as "money or money's worth in goods, services, or new credit," 11 U.S.C. § 547(a)(2), courts frequently find that employment compensation or benefits

---

[6] By citing only these affirmative defenses at this stage, Mr. D'Alessandro does not waive his right to assert other affirmative defenses in a subsequent pleading, should any be necessary.

18

conveyed on a regular basis to an employee for services rendered to the employer constitute new value contemporaneously exchanged, regardless of the employee's insider status. *See In re Jones Truck Lines, Inc.*, 130 F.3d 323, 328 (8th Cir. 1997) (applying the defense to current benefits paid to an employee benefit fund in exchange for services rendered); *In re Custom Dock & Repair, Inc.*, Nos. 04-122 & 123, 2004 Bankr. LEXIS 2002, *5-6 (Bankr. M.D. Fla. Sept. 30, 2004) (payments to the Debtor's insider vice-president and 50% stockholder were "made . . . for services rendered to the Debtor . . . [n]otwithstanding that the amount of payments were not completely uniform as to the amount or as to the date"); and *In re B. Schwartz*, 131 B.R. 623 (N.D. Ohio 1991) ( "[t]he disputed payments were clearly in exchange for valuable, necessary work performed [by insiders].  It was their understanding and intent that payments were made for services rendered.  Payments thus fall within the scope of Section 547(c)(1). . . .").

The Complaint alleges that D&L made regular payments to Mr. D'Alessandro after he and Mr. DiCarmine negotiated a new consulting agreement under which Mr. D'Alessandro agreed to continue providing services to D&L in exchange for the contemporaneous compensation he received.  Consequently, § 547(c)(1) applies and Claim I of the Complaint must be dismissed.

> b.    Mr. D'Alessandro's Compensation Was Conveyed to Him in the Ordinary Course of Business and Thus Cannot Be Avoided.

The allegations in the Complaint, taken as true except for conclusory averments, demonstrate on their face that the Trustee is not entitled under § 547 to avoid the employment compensation payments made to Mr. D'Alessandro, due to the "ordinary course of business" affirmative defense found in § 547(c)(2).  *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, 118 n.22 (Bankr. S.D.N.Y. 2011) ("Salary payments are often subject to the affirmative defenses enumerated in § 547(c) of the Code, such as transfers made in the ordinary course of business.").

19

The "ordinary course of business" defense states that:

> The trustee may not avoid under this section a transfer . . . (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—(A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or (B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2) (emphasis added).[7]  "According to the legislative history, 'the purpose of [§ 547(c)(2)] is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy.'"  *In re Teligent Inc.*, 380 B.R. 324, 340 (Bankr. S.D.N.Y. 2008) (quoting H.R. Rep. No. 95-989, at 373 (1977)).

"The ordinary course of business exception benefits all creditors because payments to those that 'remain committed to a debtor during financial distress' are protected . . . ."  *In re Enron Creditors Recovery Corp.*, 376 B.R. at 459 (quoting *In re Roblin Industries, Inc.*, 78 F.3d 30, 42 (2d Cir. 1996)).  Factors that courts consider in determining whether the defense applies include:  "(i) the prior course of dealing between the two parties, (ii) the amount of the payment, (iii) the timing of the payment, (iv) the circumstances of the payment, (v) the presence of unusual debt collection practices, and (vi) changes in the means of payment."  *In re Teligent Inc.*, 380 B.R. at 340.

The Complaint alleges that the Employment Agreement provided for payments in regular monthly intervals to Mr. D'Alessandro over a period that was intended to last six years, from

---

[7] "[S]ection 547(c)(2)(C) focuses on the [objective] industry standard, [while] sections 547(c)(2)(A) and 547(c)(2)(B) compare the current transaction between the parties to the prior course of dealings between the parties."  *In re Enron Creditors Recovery Corp.*, 376 B.R. 442, 459 (Bankr. S.D.N.Y. 2007).  The current version of the statute permits a creditor to successfully employ the "ordinary course" affirmative defense based purely on the course of dealings between the parties.  *Id.* at 461 n.11.  Mr. D'Alessandro relies only on that component of the defense, recognizing, he cannot satisfy the objective element based solely on the Complaint itself, but he reserves the right to raise it later should that be necessary.

1429916.1

2008 to 2013.  The Complaint fails adequately to allege that this agreement was not entered in the ordinary course of business.  Prior to the expiration of the Employment Agreement, Mr. D'Alessandro announced his retirement on May 13, 2011.  Mr. DiCarmine asked him to consult for another year and Mr. D'Alessandro agreed, again in an apparent arm's length negotiation, for less total compensation than he had been receiving under the Employment Agreement.

These allegations, assumed to be true, demonstrate that Mr. D'Alessandro and the Debtor had a prior course of dealing before May 2011; a new deal was agreed to between the parties that maintained those payments at the same rate, paid out at the same regular intervals, in the absence of any unusual debt collection practices.  As a result, the face of the Complaint demonstrates that Mr. D'Alessandro is entitled to the ordinary course of business defense under § 547(c)(2)(A) and therefore the Trustee may not avoid any payments to Mr. D'Alessandro under § 547 even if he is considered an insider.  Consequently, the Trustee's § 547 (and 550) Claim I must be dismissed.

> 2.    *The Section 548 Claims Fail Because the Complaint Fails Adequately to Allege that Mr. D'Alessandro's Employment Agreements Were Not Negotiated and Agreed to in the Ordinary Course of Business or that Mr. D'Alessandro Did Not Provide Reasonably Equivalent Value for His Compensation, and Therefore Claims III and IV Must Be Dismissed.*

In order for the Trustee to succeed on his Section 548 claims (III & IV), the Complaint must plausibly allege that Mr. D'Alessandro's services constituted "less than a reasonably equivalent value in exchange," 11 U.S.C. § 548(a)(1)(B)(i), for his compensation and D&L's payments to him were "not [made] in the ordinary course of business."   *Id.* § 548(a)(1)(B)(ii)(IV).

> a.    Ordinary Course of Business.

As explained above, the payments Mr. D'Alessandro received were, on the face of the Complaint, made in the ordinary course of business.  While it is Mr. D'Alessandro's burden to

21

substantiate that argument under § 547(c)(2)'s affirmative defense, under § 548(a)(1)(B)(ii)(IV), ordinary course of business is an element of the offense and it is the Trustee's burden to establish it. Given that Mr. D'Alessandro has met his burden to substantiate his reliance on § 547(c)(2)'s "ordinary course of business" defense, there can be no doubt that the Trustee has failed to meet his burden to show that the employment compensation payments D&L made to Mr. D'Alessandro were not made in the ordinary course of business. For this reason, the Complaint's third and fourth claims under § 548 (and 550) fail.

b. <u>Reasonably Equivalent Value.</u>

In addition, the Trustee has failed plausibly to allege that D&L "received less than a reasonably equivalent value in exchange," for the employment compensation payments it made to Mr. D'Alessandro. The term "reasonably equivalent value" is not expressly defined by the Bankruptcy Code, leaving courts with "the task of setting forth the scope and meaning of this term." *In re Fedders N.A., Inc.*, 405 B.R. 527, 546 (Bankr. D. Del. 2009). "To determine whether a debtor received reasonably equivalent value, a court must compare what was given with what was received." *In re Ruffini*, 2014 Bankr. LEXIS 733, at *22; *see Barber v. Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir. 1997) (same); Collier on Bankruptcy ¶ 548.05 at 5-548 (16th ed. rev. 2014). "In undertaking this analysis, courts consider the good faith of the parties, whether it was an arm's length transaction, and what the debtor actually received." *In re Ruffini*, 2014 Bankr. LEXIS 733, at *23.

The Complaint's § 548 claims fail because they allege neither the level of services that the Debtor expected to receive from Mr. D'Alessandro nor the services that it actually received from him. Instead, the Complaint merely alleges in conclusory fashion that Mr. D'Alessandro received employment compensation in an amount that constituted "an astronomically generous

22

arrangement for a law firm administrator, and far in excess of the reasonably equivalent value of the services contracted for or provided." Compl. ¶ 42. The Complaint did not attach the Employment Agreement and otherwise never describes what services were contracted for, or what services Mr. D'Alessandro provided. Hence, the Complaint fails to plead lack of equivalent value. *See In re Old CarCo LLC*, 2011 U.S. Dist. LEXIS 134539 at *48 ("[W]ithout plausible allegations about the valuation of major elements of [the defendant's] Consideration, [the Trustee's complaint] does not state a plausible claim."), *aff'd Liquidation Trust v. Daimler AG (In re Old CarCo LLC)*, 509 Fed. Appx. 77, 78-79 (2d Cir. 2013); *see also In re Caremerica, Inc.*, 409 B.R. at 756 ("The court finds that the trustee's allegations mirror the elements of § 548(a)(1)(B). However, . . . [m]issing from the Amended Complaint is an identification of the consideration received by each transferor [or] information as to why the value of such consideration was less than the amount transferred . . . . In the absence of such factual assertions, the trustee's claims based on constructive fraud fail to meet the Rule 8 pleading standard."). For these reasons, in addition to the Complaint's failure to show that Mr. D'Alessandro was an insider, the Complaint's § 548 claims (III & IV) fail.

3.    *The Claim II State Law Claim Must Be Dismissed Because it Fails Adequately to Allege that D&L Received Less Than Fair Consideration.*

The Complaint alleges, in conclusory fashion, that "[t]he Contract Cash Transfers [("CCTs" *i.e.*, Mr. D'Alessandro's employment compensation)] were made without fair consideration because although the [CCTs] arguably were in discharge of antecedent debt, D'Alessandro did not exchange fair consideration . . . ." Compl. ¶ 81. These allegations are quintessential formulaic recitations of the elements of a statute (here, § 277). The Complaint merely alleges the tautology that the transfers "were made without fair consideration because . . . D'Alessandro did not exchange fair consideration." This allegation that D&L received less than

23

fair consideration is plainly inadequate. Because as set forth above in Part A.2, the Complaint likewise fails adequately to plead lack of good faith, Claim II must fail.

In addition, the term "fair consideration" under the DCL has essentially the same meaning as "reasonably equivalent value" under § 548. *See In re Ruffini*, 2014 Bankr. LEXIS 733 at *20-22. Given that the terms "reasonably equivalent value" and "fair consideration" are substantially interchangeable, Mr. D'Alessandro's argument in Part B.2.b that the Complaint fails plausibly to allege that he did not provide "reasonably equivalent value" is equally applicable here. *See In re Ruffini*, 2014 Bankr. LEXIS 733 at *20-22. Claim II fails because, as with Claims III & IV, it does not allege what services the Debtor expected to receive or actually received from Mr. D'Alessandro. For these reasons, the Complaint's second claim for relief under Bankruptcy Code § 544 (and 550) and DCL § 277 (and 278) must be dismissed.

C.    **The Trustee Is Judicially Estopped from Seeking to Clawback Conveyances at Least to the Extent that They Were Made Prior to 2010.**

Even if Claim II of the Complaint is not fully dismissed, it should at least be limited in scope. In the PCP Decision, the Court noted that the Debtor's Chief Restructuring Officer and its financial analyst both testified "that there was strong evidence to support the assertion that the Debtor was insolvent in 2012, but insolvency would be more difficult to prove for 2011, and even harder for 2010. . . ."; they also testified that "the firm had a clean audit opinion issued in 2010 and was able to refinance a significant portion of its debt, and in 2011 the average partner generated revenue of $800,000." PCP Decision at 23. Based on this assessment, the Court approved the PCP Settlement in which 444 partners agreed to pay $71 million to the Estate or nearly $160,000 per partner. The Court concluded that this was "fair and equitable and in the best interest of the estate." *Id*. at 26. Such a conclusion would have been impossible if the Debtor's wind-down professionals had testified and the Court had found that the insolvency date

24

could reasonably reach back as far as 2009. In fact, the Debtor did not even claim that insolvency could have occurred prior to 2010 and, in its PCP Decision, the Court was skeptical that the insolvency date could reach back as far as 2010.

As set forth in the motion to dismiss filed by Stephen DiCarmine and Joel Sanders, the Trustee is estopped from alleging in the Complaint that the insolvency occurred prior 2012. *See Jacobs v. DiCarmine & Sanders*, Adv. Pro. No. 13-01765 (MG), Mem. of Law in Support of Defs.' Mot. to Dismiss Pl.'s Compl. 7-12 (May 1, 2014) (DE 15). Mr. D'Alessandro incorporates that argument here by reference.

However, at a bare minimum, to "protect the integrity of the judicial process," and ensure that the Trustee is not benefitted by "deliberately changing [its] position[] according to the exigencies of the moment," the Court should at least bar the Trustee from using § 277 to reach back to transfers made prior to 2010, given that the Debtor presented evidence to this Court about the implausibility of establishing insolvency prior to that time. *New Hampshire v. Maine*, 532 U.S. at 749-51; *In re Adelphia Recovery Trust*, 2014 U.S. App. LEXIS 6211 at *10 (quoting same).[8]

## CONCLUSION

For the foregoing reasons, Mr. D'Alessandro respectfully requests that the Liquidating Trustee's Complaint against him be dismissed in its entirety.

---

[8] The Court was justified in its skepticism, based on the Debtor's own evidence, that the Trustee would be able to establish insolvency prior to 2012. Should this motion to dismiss be denied, the actual date of insolvency would need to be litigated. In the context of that litigation, the Trustee should, at a minimum, be precluded from arguing that the date of insolvency was prior to 2010.

1429916.1

Dated:  May 23, 2014

Respectfully Submitted,

/s/ Barry J. Pollack
Barry J. Pollack
Charles F. B. McAleer, Jr.*
Jonathan D. Kossak*
655 Fifteenth Street, N.W., Suite 900
Washington, D.C.  20005-5701
Tel:     (202) 626-5800
Fax:     (202) 626-5801

* *Pro Hac Vice* Application Pending

*Attorneys for Mr. Dennis D'Alessandro*

1429916.1

## CERTIFICATE OF SERVICE

Barry J. Pollack, a member in good standing of the Bar of the State of New York, hereby certifies under penalty of perjury that on May 23, 2014, he caused true and correct copies of the Defendant's Memorandum in Support of His Motion to Dismiss the Liquidating Trustee's Complaint and the Declaration of Barry J. Pollack in support thereof to be served on Plaintiff's counsel by electronic mail at the following addresses:

adiamond@diamondmccarthy.com
akim@diamondmccarthy.com
cmurray@diamondmccarthy.com
aryan@diamondmccarthy.com
mfishel@diamondmccarthy.com

Dated: May 23, 2014
New York, New York

/s/ Barry J. Pollack

Barry J. Pollack
Miller & Chevalier Cht'd
655 Fifteenth Street, N.W., Suite 900
Washington, D.C.  20005-5701
Tel:      (202) 626-5800
Fax:      (202) 626-5801
bpollack@milchev.com

*Attorney for Mr. Dennis D'Alessandro*

27

1429916.1